## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:19-cr-8-NR-35 |
| | ) | 2:13-cr-59-NR-3 |
| DORIANNE HARRIS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

Following a detention hearing, Chief Magistrate Judge Eddy ordered Defendant Dorianne Harris to be detained pending trial. Mr. Harris now moves the Court to reconsider the detention order and to grant him pretrial release. ECF 2302. For the reasons discussed below, the Court will deny Mr. Harris's motion.

## BACKGROUND

Mr. Harris previously pled guilty to conspiracy to distribute 100 grams or more of a mixture or substance containing a detectable amount heroin in violation of 21 U.S.C. § 846 at Case No. 2:13-cr-59. Case No. 2:13-cr-59, ECF 91. For that offense, Judge Bissoon sentenced Mr. Harris to 60 months of imprisonment and 60 months of supervised release. Case No. 2:13-cr-59, ECF 270, p. 1. Mr. Harris began his term of supervised release for that conviction on December 5, 2016. *Id.*

About halfway through his supervised-release term, the government indicted Mr. Harris for conspiracy to distribute and possess with intent to distribute Schedule I, II, and III controlled substances in violation of 21 U.S.C. § 846 in this case. ECF 501. In response, the United States Probation Office filed a warrant petition, alleging violations of mandatory and standard conditions of Mr. Harris's supervised release. Case No. 2:13-cr-59, ECF 254. Judge Bissoon signed the warrant and ordered Mr. Harris detained with no bond pending his revocation hearing. Case No. 2:13-cr-59,

ECF 256.   Both the charge against Mr. Harris here and the supervised-release violation petition at Case No. 2:13-cr-59 remain pending.

Mr. Harris already asked for his detainer at Case No. 2:13-cr-59 to be lifted. Case No. 2:13-cr-59, ECF 270.   Following briefing, this Court denied that motion, finding that Mr. Harris should be detained because, among other reasons, he "poses a flight risk," "his track record [while on release in the past] is a poor one," and "any instance of drug trafficking, on its own, presents a risk of danger to the community." Case No. 2:13-cr-59, ECF 277, pp. 5, 8-9.   This Court also found that electronic monitoring "will not effectively mitigate this danger because those conditions would not provide information on any potential, and likely, trafficking activities."  *Id.* at p. 9.

Mr. Harris then filed a motion for a detention hearing here.  ECF 2209.

On August 7, 2020, Chief Magistrate Judge Eddy held a detention hearing. ECF 2266.   At the hearing, the government called Agent Matthew Truesdell of the Pennsylvania Office of Attorney General.   ECF 2369, 3:11-13.   Agent Truesdell is assigned to the Organized Crime Section.  *Id.*   During the hearing, Agent Truesdell testified about the government's investigation that led to Mr. Harris's indictment, which included wiretaps, physical surveillance, electronic surveillance, cooperating witnesses, and GPS tracking on phones.  *Id.* at 5:1-5.  It was from these investigative techniques that the government learned of Mr. Harris's involvement in alleged cocaine trafficking in Allegheny and Beaver Counties.  *Id.* at 5:10-18.

According to Agent Truesdell, coordinated surveillance revealed that two of Mr. Harris's co-defendants, Noah Landfried and James Perry, made stops at Mr. Harris's residence shortly after acquiring quantities of cocaine.  *Id.* at 7:24-13:11.  On one occasion, agents observed Mr. Perry carrying a bag into Mr. Harris's residence after being re-supplied with cocaine, and then exiting a short time later emptyhanded.  *Id.* at 12:8-13:8.   A cooperating witness also provided firsthand

- 2 -

reports of Mr. Harris's cocaine distribution. *Id.* at 13:25-14:3. This investigation ultimately led to an arrest warrant being issued for Mr. Harris. *Id.* at 14:23-25.

Law enforcement tried to serve Mr. Harris with that warrant at his mother's apartment located at 2303 East Hills Drive, but he wasn't there. *Id.* at 15:4-7. Mr. Harris was required to reside at that apartment as a condition of his supervised release. *Id.* at 15:8-10. The agents left their contact information with Mr. Harris's mother. *Id.* at 15:24-16:7. Agents then tried to find him at his girlfriend's mother's residence, but he was not there, either. *Id.*at 16:17-20. The agents did, however, tell his girlfriend's mother that there was a warrant for his arrest. *Id.* at 16:25-17:1.

After these unsuccessful attempts to execute the arrest warrant, Mr. Harris was declared a fugitive, and the investigation was handed over to the United States Marshal Service. *Id.* at 17:8-11. Eventually, Mr. Harris was located at an address in Munhall, along with another co-defendant, Anthony Smith, who had also been listed as a fugitive. *Id.* at 17:17-19, 18:17-18. Mr. Harris surrendered at that address without incident. *Id.* at 18:15-16.

At the detention hearing, Mr. Harris's Probation Officer, Damon Neal, testified that Mr. Harris did not check in with him as required for about four months from the time his warrant was issued until he was apprehended. *Id.* at 27:19-21. He also testified that the location at which the United States Marshals Service apprehended Mr. Harris was not an approved residence for him. *Id.* at 28:6-8. And he testified that Mr. Harris had violated the conditions of his supervised release by testing positive for marijuana and cocaine use more than once. *Id.* at 28:12-17. Mr. Neal noted, however, that Mr. Harris successfully completed drug treatment after those positive tests. *Id.* at 31:2-8.

During the hearing, Mr. Harris proffered that he could be released to his mother's home and that she would be willing to supervise him as a third-party

custodian.  *Id.* at 40:3-6.  He also stated that he is able and willing to be "hooked up to electronic monitoring."  *Id.*

After the testimony and argument from counsel, Chief Magistrate Judge Eddy concluded that a rebuttable presumption of detention applied to Mr. Harris (*Id.* at 40:23-41:4), that he failed to overcome the presumption (*id.* at 44:3-4), and that the government had established its case for detention by clear and convincing evidence (*id.* at 44:7-9).

In applying the relevant Section 3142(g) factors, Chief Magistrate Judge Eddy first concluded that the nature and circumstances of the offense favor detention because Mr. Harris is "charged with a crime involving narcotics," which is a "very serious offense."  ECF 2369, 41:11-14.  Next, she considered the weight of the evidence, finding that the weight of the evidence against Mr. Harris is "strong."  ECF 2273, p. 2.  Chief Magistrate Judge Eddy then considered Mr. Harris's history and characteristics, finding that while Mr. Harris is a lifelong resident of Pittsburgh, has significant family and community ties, and only minor drug use for which he has successfully completed treatment, he has an unstable employment history and a somewhat extensive criminal history, including a prior conviction for a drug-trafficking felony.  ECF 2369, 41:23-43:15.  Finally, Chief Magistrate Judge Eddy considered the nature and seriousness of the danger to the community and the risk of flight if Mr. Harris were released.  *Id.* at 43:16-44:2.  She found that these factors favored detention because Mr. Harris "got a second federal indictment while under supervision for a prior federal offense" and could not be located by authorities for "four months."  *Id.* at 43:18-21.

Chief Magistrate Judge Eddy thus concluded, that "based on the evidence," there was "clear and convincing evidence that no conditions will reasonably ensure the safety of the community," and that "not condition will reasonably assure the

appearance of [Mr. Harris]." *Id.* at 44:3-11.  Chief Magistrate Judge Eddy therefore ordered Mr. Harris detained pending trial.  ECF 2273.

Mr. Harris now moves for this Court to reconsider the detention order.  ECF 2302.  The motion is fully briefed and ready for disposition.

## **LEGAL STANDARD**

Under 18 U.S.C. § 3145(b), "If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  The district court then reviews the magistrate judge's detention order *de novo*.  *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).  If, as here, the record was fully developed before the magistrate judge, "and the parties have not proffered any additional evidence which would materially alter the decision of the Magistrate Judge . . . the [District] Court will rule on the record established before the Magistrate Judge."  *United States v. Bastianelli*, No. 17-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018) (Fischer, J.).  No "additional or independent evidentiary hearing [is required] by the district court, and the court may incorporate the transcript of the proceeding before the magistrate judge, including any admitted exhibits."  *United States v. Talbert*, No. 20-266, 2020 WL 6048788, at *3 (W.D. Pa. Oct. 13, 2020) (Ranjan, J.) (citation omitted).

The defendant's detention pending trial is warranted if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(e)(1).  A presumption in favor of detention—subject to rebuttal by the defendant—arises if "there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is

prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)."  18 U.S.C. § 3142(e)(3)(A).

A defendant can rebut this presumption by producing "some credible evidence …that he will appear and not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).  In cases like this one involving distribution of narcotics, it "is not only helpful, but is often crucial to an effective rebuttal of the statutory presumption" that the defendant show sufficient evidence of his "moral integrity, respect for the law, or personal reliability." *United States v. Santiago-Pagan*, No. 8-424, 2009 WL 1106814, at *5 (M.D. Pa. April 23, 2009).  That said, "[t]he defendant's burden of production is relatively light and has been construed as easy to meet." *United States v. Araiza-Vega*, No. 20-218, 2020 WL 6546136, at *4 (W.D. Pa. Nov. 6, 2020) (Hardy, J.) (citations omitted).

If the defendant provides enough evidence to rebut the presumption of detention, the evidentiary burden shifts back to the government to show that the defendant presents either a risk of flight or a danger to the community.  *See United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986); *United States v. Perry*, 788 F.2d 100, 114-15 (3d Cir. 1986).

In determining whether pretrial detention is ultimately warranted, the Court considers the following statutory factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his character, family, employment, finances, length of residence, ties to community, drug abuse history, criminal history, record of appearance at court proceedings, and whether he was on bond at the time of the charged offense; and (4) the nature and seriousness of the danger posed by the

person's release.  *See, e.g.*, *Carbone*, 793 F.2d at 560-61; *Talbert*, 2020 WL 6048788, at *3.

**<u>DISCUSSION & ANALYSIS</u>**

Mr. Harris does not dispute that the statutory presumption favoring detention applies here.  ECF 2418.  Instead, he argues that he has rebutted the presumption, and the government has failed to show he would fail to appear when required or that he would endanger the community if released.  *See generally id*.  The government disagrees, arguing that Mr. Harris should be detained pending trial.  ECF 2430.

After carefully reviewing the filings related to Mr. Harris's motion, as well as the record, the Court finds that although Mr. Harris provided enough evidence to rebut the presumption of detention, the government has met its ultimate burden of establishing by clear and convincing evidence that Mr. Harris is both a flight risk and presents a danger to the community if released.  Thus, detention pending trial is warranted.

**I.     Mr. Harris rebutted the presumption of detention.**

Mr. Harris has offered credible evidence that he may not be a flight risk.  Mr. Harris is a lifelong resident of the Pittsburgh area.  ECF 2369, 41:24-25.  He has significant family ties to the area, including his mother, girlfriend, and two-year-old daughter.  ECF 2418, p. 5.  It does not look like he has ever failed to appear for a court appearance, including his required appearances in his prior federal case.  *Id*. at p. 4.  He voluntarily surrendered himself for his prior offense at the scheduled date and time.  *Id*. at p. 5.

Mr. Harris has also offered credible evidence that he may not pose a danger to the community if released.  Although he is alleged to have participated in a large-scale drug-trafficking conspiracy, he is only alleged to have been involved with the distribution of one of the twelve forms of controlled substances in the conspiracy.  *Id*. at p. 7.  Unlike several of his co-defendants, Mr. Harris's participation does not

- 7 -

involve the distribution of controlled substances into detention facilities. *Id.* at p. 8. There is no allegation that Mr. Harris used or possessed any firearms or committed any acts of physical violence in furtherance of the conspiracy. *Id.*

This evidence is enough for Mr. Harris to meet his "relatively light burden" of rebutting the presumption of detention and shifting the burden to the government to justify detention.

## II. The government has met its burden.

While Mr. Harris has rebutted the presumption of detention, it "does not disappear but rather remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in s 3142(g)." *Araiza-Vega*, 2020 WL 6546136, at *4 (cleaned up). And after weighing those factors, the Court finds that the government has met its burden of showing by a preponderance of the evidence that Mr. Harris does present some risk of flight and by clear and convincing evidence that he poses a threat to the community if released. Detention is warranted.

***Nature and circumstances of the offense.*** While he is potentially a lesser player in the overall conspiracy, Mr. Harris's offense is still undeniably serious. He is charged with conspiring to distribute kilogram quantities of cocaine—a substantial amount of a dangerous narcotic. ECF 2430, p. 1. "The statutory language as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985). This is especially true with "trafficking significant quantities of very dangerous and addictive drugs like heroin and ***cocaine***." *United States v. Oliver*, No. 16-40, 2016 WL 1746853, at *8 (W.D. Pa.

May 3, 2016) (Fischer, J.) (emphasis added).   The Court finds this factor favors detention.

   ***Weight of the evidence.***   The weight of the evidence against Mr. Harris is strong.   During the detention hearing, Agent Truesdell testified that a cooperating witness provided first-hand, self-inculpatory information about Mr. Harris's alleged drug-trafficking activity.   ECF 2369, 13:25-14:3.   This witness personally observed Mr. Harris in possession of the kilogram quantities of cocaine.   *Id.* 14:11-17.   Agent Truesdell also testified that the government's surveillance operation revealed Mr. Landfried and Mr. Perry travelling directly to Mr. Harris's apartment shortly after they returned from cocaine re-supply trips.   *Id.* at 7:24-13:11.   On one of those occasions, agents observed Mr. Perry entering Mr. Harris's apartment building with a duffel bag and then leaving a short while later emptyhanded.   *Id.* at 12:8-13:8.   On both occasions, after stopping at Mr. Harris's apartment, Mr. Landfried and Mr. Perry then met with another co-defendant, Michael Frawley, who is alleged to be another cocaine-dealer customer.   *Id.* at 7:24-13:11.   The Court finds this factor favors detention.

   ***History and characteristics of the defendant.***   As discussed above, Mr. Harris has strong ties to the community and appears to have good relationships with his family.   While those facts may mitigate his risk of flight, they do not eliminate it.   And Mr. Harris has already proven himself to be a flight risk in this case.

   Mr. Harris absconded while on supervised release and became a fugitive for four months following his indictment.   Mr. Harris's attempts to minimize this behavior are not convincing.

   As established at the evidentiary hearing, federal agents went to Mr. Harris's mother's apartment to serve his arrest warrant.   ECF 2369, 15:4-7.   As a condition of his release, Mr. Harris was supposed to be residing at that address.   *Id.* at 15:8-10.   Mr. Harris was not there when the federal agents arrived.   *Id.* at 16:13.   His mother,

however, answered and the federal agents told her that there was an arrest warrant for her son. *Id.* at 15:24-16:7. One of the agents left his business card so that Mr. Harris could contact the agent to arrange his surrender. *Id.* The agents also went to the residence of Mr. Harris's girlfriend's mother. *Id.* at 16:19-20. Mr. Harris was not there either, but his girlfriend's mother was home. *Id.* at 16:21-17:1. The agents also informed her that there was an arrest warrant for him. *Id.*

Given these undisputed facts, the Court agrees with Chief Magistrate Judge Eddy that it "is not credible" that Mr. Harris "had no knowledge" of his arrest warrant. *Id.* at 43:22-44:1. Despite that presumed knowledge, Mr. Harris did not turn himself in. And the fact that he was discovered at an address different from the one he was supposed to be living at suggests that he may have been trying to evade capture. The Court also agrees with Chief Magistrate Judge Eddy that Mr. Harris's mother's failure to persuade her son to address his arrest warrant "points to his mother not being an appropriate custodian." *Id.* at 43:25-44:1.

Mr. Harris's criminal history also weighs against release. Mr. Harris is not a first-time offender. In fact, at the time of his arrest, Mr. Harris was on supervised release for a conviction of the very same offense he is alleged to have committed in this case. As this Court previously found as to Mr. Harris, it believes that "the best predictor of how Defendant will behave if we were to be released is how he behaved when released in the past, and his track record is a poor one." *See* Case No. 2:13-cr-59, ECF 277, p. 8 (cleaned up). The Court therefore concludes that Mr. Harris's conduct while on supervised release weighs heavily in favor of detention. *See United States v. Smith*, No. 08-376, 2020 WL 922694, at *3 (W.D. Pa. Feb. 26, 2020) (Conti, J.).

***Nature and seriousness of the danger posed.*** As discussed above, the main danger posed by Mr. Harris here is the risk of continued drug-trafficking. Separate and apart from that, the Court doesn't find that Mr. Harris poses any

additional risk of harm, such as through a pattern of violent behavior or possession and use of firearms. That said, the Court is not convinced that there are conditions of release that would deter Mr. Harris from engaging in serious drug trafficking.

Specifically, the Court is concerned that location monitoring and home arrest will not effectively mitigate this danger because those conditions would "not provide information on any potential, and likely, trafficking activities," nor would they provide any "information as to third parties frequenting [Mr. Harris's] residence in violation of social distancing requirements." *United States v. McCurin*, No. 06-225, 2020 WL 1700030, at *3 (E.D. Cal. Apr. 8, 2020).

In sum, the Court finds that, based on the evidence introduced at the detention hearing, weighing all five relevant factors, detention here is warranted.

## III. Mr. Harris's circumstances are materially different from those of Mr. Smith.

Finally, Mr. Harris claims that he should be released on bond because his co-defendant and cousin, Anthony Smith, was released on bond. Mr. Harris and Mr. Smith were found together when the United States Marshal Service apprehended Mr. Harris. Like Mr. Harris, Mr. Smith was on supervised release at the time of his arrest. In that case, the government similarly argued that Mr. Smith had "absconded" for four months following the issuance of his arrest warrant and therefore presented a significant flight risk. While there are some similarities between these two defendants, there are important differences that require detention in Mr. Harris's case.

To begin with, as to Mr. Smith, the Court noted that granting his release was a "close call." ECF 2179, p. 1 ("[T]his motion presented a close call for Judge Kelly, as well as now for this Court."). Mr. Harris's case is not so close. Mr. Smith was not involved in the aspects of the conspiracy concerning cocaine, unlike Mr. Harris. What's more, unlike here, at Mr. Smith's detention hearing the government made no

presentation as to the weight of the evidence against Mr. Smith. *Id.* Further, on considering Mr. Smith's request for relief, the Court did not have the benefit of a full record on the government's efforts to carry out his arrest warrant. *Id.* at pp. 1-2. Here, for example, Agent Truesdell provided substantial testimony on those efforts, which make it implausible that Mr. Harris did not know about his outstanding arrest warrant and the government's efforts to track him down.[1]

Ultimately, every release motion must be decided based on the circumstances and the record in each specific case. The record that the Court has before it in Mr. Harris's case warrants detention.

## CONCLUSION

For the reasons discussed above, although Mr. Harris has rebutted the presumption of detention, the government has met its burden of proving that there no conditions of release will reasonably assure Mr. Harris's future appearance and the safety of any other person and the community. Mr. Harris's motion is denied.

An appropriate order follows.

DATED: December 8, 2020                         BY THE COURT:

                                                /s/ *J. Nicholas Ranjan*
                                                United States District Judge

---

[1] Mr. Harris has also requested release at Case No. 2:13-cr-59, where he is held for a supervised-release violation. A much more stringent standard applies to that request; to obtain release, Mr. Harris (not the government) bears the ultimate burden of proof by clear and convincing evidence that release is justified. *See* Case No. 2:13-cr-59, ECF 277, pp. 3-4; *see also Smith*, 2020 WL 922964, at *3 (noting that 18 U.S.C. § 3143 applies to requests for bond during the pendency of a hearing on a violation of supervised release, and explaining to overcome the presumption of detention created by that statute a defendant must present "clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released"). Because, as discussed above, the government has met its burden in demonstrating detention, Mr. Harris necessarily cannot establish that release is warranted in Case No. 2:13-cr-59, where the burden for him is much greater. His request is therefore denied.